JOHN H. WICKER

*v.*

ROMINE V. HOTCHKISS.

MALICIOUS PROSECUTION—*of the want of probable cause.*  Where a party procured an indictment to be found against another, it was *held,* in an action for malicious prosecution against him, that, if in so doing he acted under the advice of counsel, after having communicated to such counsel all the facts bearing upon the guilt or innocence of the accused, of which he had knowledge, or could, by reasonable diligence have ascertained, the advice thus given was a protection against such prosecution.

APPEAL from the Circuit Court of Cook County ; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. GOUDY & CHANDLER, and Mr. E. W. EVANS, for the appellant.

Messrs. E. & A. VAN BUREN, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court :

This was an action on the case for malicious prosecution. The *gravamen* is the procurement of an indictment for larceny, maliciously and without probable cause ; and the consequence the arrest and imprisonment.

There must be proof of both malice and of want of probable cause, to render the party liable in this action.

If there was probable cause for procuring the indictment, there can be no liability upon the defendant ; and if he communicated to counsel all the facts, bearing upon the guilt or innocence of the accused, of which he had knowledge, or could by reasonable diligence have ascertained, he ought not to be compelled to respond to the large verdict for $15,000.

Was there probable cause for the prosecution ?

The receipt, signed by the plaintiff and read upon the trial, was conclusive evidence that the defendant owned the cattle at the time they were shipped to Chicago, if there was no proof

to explain it.    The letter of January 22, 1867, does not change the effect of the receipt.    The latter expressly acknowledged the cattle to belong to Wicker, and Hotchkiss agreed to fatten them at his own expense; and when they were sold, Wicker was to be paid a fixed sum, with ten per cent interest thereon, and out of the proceeds of the sale all necessary expenses of transportation, etc., were to be paid, and the overplus, if any, was to be paid to Hotchkiss.    His interest was entirely contingent.    If the sale was not for a good price, he had none.

Hotchkiss was exceedingly anxious to contract the cattle at a figure which would leave a surplus for him, and for this purpose he evidently wrote to Wicker, and received the reply of January 22d.    He testified that it was a reply to one he had written on the 19th of January, which was not introduced.    The subsequent letters of Hotchkiss confirm the only construction which can be given to the receipt.    He expresses anxiety to have the cattle contracted, so that he can obtain money to purchase corn; begs Wicker to come and see them; asks for a copy of the receipt; says that he can sell for about seventy dollars a yoke for work cattle; and with Wicker's consent will sell a few.

Why did he wish any consent if he had the right to dispose of them?    The consent was not given; and immediately after the failure to consummate an agreement with Wicker to fix a price upon the cattle, or to procure an advance of money from him, he wrote three letters, without date, complaining of a disease of the skin, which had appeared upon the cattle; that some of them were losing fifteen or twenty pounds per week; and yet, in a letter of January 30th, evidently a short time previous to the letters without date, he spoke of the cattle as having done better than any he ever fed, and that he could make them the best cattle which had been shipped from the county.    There was matter in these letters calculated to rouse the suspicion of any man.

What followed?    Hotchkiss drove thirty-two head of the cattle to a station further from Chicago than the station on the railroad usual for shipment from his neighborhood;

shipped them in the night; and sold them in Chicago without the knowledge or consent of Wicker, and appropriated the proceeds of the sale to his own use.

Such were the facts known to Wicker when the prosecution was instituted. The proof, upon the trial, developed some circumstances which might somewhat relieve the conduct of Hotchkiss, but they were unknown to Wicker at the time the indictment was procured.

Wicker knew that he owned the cattle; that Hotchkiss had agreed to feed them until the 1st of May; that the receipt contained an acknowledgment of Wicker's right to sell; and when he ascertained that a sale had been made, under such circumstances, before the expiration of the time for which the cattle were to be fed—and secretly and without any communication with him—a strong suspicion would not only be aroused, but an honest belief created that the party was guilty of crime. There was reasonable ground for belief of guilt; and there can not be any liability in an action for malicious prosecution.

Did the prosecutor submit to counsel all the facts within his knowledge, capable of proof, or which he might have known by the exercise of reasonable diligence, and did he act in good faith upon the advice given?

The testimony of Mr. Reed, the State's attorney of Cook County, was, substantially, that Mr. Evans, an attorney of this court, and the prosecutor, came to his office and communicated to him the facts about the shipment of the cattle at an unusual station, in the night time; that Hotchkiss had been employed to feed them; that he had no interest in them and was to be paid for his services; that he had sold them in Chicago without the knowledge or consent of the prosecutor; and then the receipt was shown; and Mr. Reed stated that he thought the party was guilty of larceny.

Counsel for appellee urge that material facts were withheld from the counsel, and that absolute falsehoods were stated.

The facts alleged to have been withheld were some arrangements with one Miller, months prior to the date of the

receipt, to feed the cattle, and the purchase of some of them, by Hotchkiss, from another person. All former agreements about the cattle and rights in them were merged in the receipt. Hotchkiss could not go behind his own written acknowledgment of the ownership of Wicker.

The falsehood charged consists in the statement made to Mr. Reed, that Hotchkiss was not a partner and had no interest in the cattle. Immediately following this statement the receipt was produced, and the counsel remarked, " By this I see that he is not a partner." The entire evidence of any interest of Hotchkiss was embodied in the receipt, and in the production of that the prosecutor discharged his whole duty and disclosed all that he could possibly know.

We think there was a full disclosure of all the facts known, or which, in the exercise of common prudence, might have been known, and that the advice given is a protection against this prosecution. *Ross* v. *Innis*, 26 Ill. 259 ; *Same* v. *Same*, 35 Ill. 487 ; *Walter* v. *Sample*, 25 Penn. 275.

Counsel for appellee have argued the case as though it was an action for abuse of legal process, or for an arrest for the purpose of extorting money. Such is not the character of the declaration. In such actions it has been held that it is not necessary to prove malice or want of probable cause, for the law will imply both. *Prough* v. *Entriken*, 11 Penn. 81 ; *Page* v. *Cushing*, 38 Maine, 523.

There is evidence, in this record, upon which to base the inference of a most oppressive and outrageous abuse of the criminal process for the extortion of money ; but this will not make out the cause of action alleged in the declaration.

Counts might be framed to meet this evidence ; but in the view we take of this declaration, and the facts necessary to sustain it, we are compelled to reverse the judgment.

The abstract of appellant is not in accordance with the rules of court ; is to some extent unfair and incomplete : and the costs of it must be taxed against appellant.

The judgment is reversed and the cause remanded.

*Judgment reversed.*