## Richmond.

FORBES & ALLERS v. HAGMAN.

SAME v. GRAVILLER.

January 13.

1. F & A, partners, living in Baltimore, carry on a business near Richmond by their general agent, M. M brings an action in the name of F & A against H & G, partners, claiming they are indebted to the plaintiffs; and upon affidavit by M, under the statute, A & G are held to bail, and not being able to give it they are held in prison until the trial, when the plaintiffs are non-suited. H and G then bring their separate actions against F and A for malicious arrest and imprisonment. It seems F & A had no knowledge of the arrest and imprisonment until the parties were in prison, when F, coming to Richmond, he was informed of the fact by M, when he made no inquiry as to the grounds of the arrest, and he gave no directions for their release. HELD:

    1. This was a virtual ratification and adoption of what had been done by the agent; and the principals, F & A, are responsible for the consequences of the agent's act.

    2. Under the statute, Code of 1873, ch. 148, § 33, to authorize the holding the parties to bail, M must have believed when he made his affidavit that the facts sworn to therein were true—that is, that the plaintiffs in their suit had cause of action against the defendants in that suit for the amount stated in the affidavit, and that there was probable cause for believing that the said defendants were about to quit the State unless forthwith apprehended. And taking him for a man of common prudence, he must have been justified in so believing from the circumstances then known to him. It was not necessary that the facts should be actually true, but it is necessary that he should have believed them to be true; and that as a prudent man, under the circumstances then known to him, he was warranted in entertaining that belief.

3. M, the agent, had been instructed by his principals to take no legal steps in regard to any of their matters without first consulting and advising with W, their regular attorney in Richmond; and he did consult the counsel and acted on his instructions. It is true that a party in some cases may act on the advice of counsel *bona fide* sought and obtained, without incurring liability for damages as for a *tort*, even though the counsel may have been mistaken in the law. But to justify him, something more than the mere advice must be made to appear. The facts must be shown on which the advice was given; and it must be a full, correct and honest statement by the defendants of all the material facts known to them, without reference to their understanding of the case.

4. In this action malice may be inferred from want of probable cause, though it is said it is not a necessary inference. It is always a question for the jury under all the circumstances of the case. But the term malice is not to be considered in the sense of spite or hatred against an individual, but of *malus animus*, and as denoting that the party is actuated by improper and indirect motives. The improper motive, or want of proper motive, inferrible from a wrongful act, based upon no reasonable ground, constitutes of itself all the malice deemed essential in law to the maintenance of the action.

5. An instruction by the court that the plaintiff was not entitled to recover without satisfactory proof that the arrest was made without probable cause and with malice. But if they shall believe that at the time of instituting the suit and the suing out the *capias* the defendants had no reasonable and probable cause for believing, &c., that the plaintiff was about to leave the State unless he was forthwith apprehended, the jury may infer malice from their action; and if they think such inference a reasonable one from all the evidence, they should find for the plaintiff. HELD: 1. The using the word "reasonable" as well as "probable," is not error. 2. The words "they should find for the plaintiff" must be construed as based not on the finding of malice only, but on the finding also of the non-existence of probable cause. 3. The legal malice may exist, though the party making the oath may not have wilfully sworn falsely.

6. The record in the action of F & A against H & G is competent evidence in this case for the plaintiffs; and slight variances between the declaration and the record, which would not prevent the record in the present case from being a bar to another action for the same· cause, are not sufficient to exclude it.

These were two actions in the circuit court of Henrico, for malicious and false imprisonment, one of them brought by Joseph Hagman against James S. Forbes and John A. Allers, and the other by Frederick Graviller against the same defendants. The facts in both cases are the same, and arose out of the same transaction.

The plaintiffs, who had lived in Washington city for years, were joint contractors with the United States government for building a brick wall around the national cemetery at Seven Pines, near the city of Richmond, with iron gates, as specified; and the defendants were partners living in the city of Baltimore, but carrying on the business of brick-making, near the city of Richmond, under the name and style of The Baltimore Brick Company, and John Mann, Jr., was their general agent to conduct that business. The plaintiffs, who were partners in this contract under the name and style of Graviller & Co., entered into a contract under seal with Mann, as attorney for Forbes and Allers, for the furnishing of the brick for the said work, of a definite description; and. the plaintiffs gave to Mann a power of attorney authorizing him to collect from the United States authorities the eighty *per cent.* of the contract price of the .work as it would become payable to them as the work progressed—this being understood as a surety for the payment for the brick, but it was not a part of the contract between them and Mann.

After the foundation of the wall had been built, the agent of the United States government required for the rest of the wall a smaller brick than that which had been agreed on between Graviller & Co. and Mann, and Mann agreed to furnish it at the same price.

When the walls were nearly completed, Graviller & Co. made a contract with Netherland to furnish the stone pillars for the gates, and in order to make a payment to Netherland they applied to Mann for money to make it, and he

refused to let them have it. They thereupon revoked the power of attorney they had given him.

Soon after this difference Mann, as attorney in fact for Forbes and Allers, instituted an action in the circuit court of Henrico in their name against Graviller and Hagman, to recover an amount he claimed to be due the said Forbes and Allers in their contract with Graviller & Co.; and made an affidavit before William Hall Crew, a justice of the peace, that Graviller & Co. were indebted to Forbes and Allers in the sum of $402.85, with interest from the 14th August, 1876, and that there was probable cause for believing that the said defendants were about to leave the State unless they were forthwith apprehended. And upon this affidavit the defendants were ordered to be held to bail, each in the sum of $800. These parties were thereupon arrested by the sheriff, and not being able to give the security, were committed to jail, where they remained from August 14th, 1876, until October, 1876; when the case coming on for trial, after a part of the evidence was heard, the plaintiffs were non-suited; and the defendants were discharged from custody. And they then brought the present action.

On the trial of the causes there was a verdict and judgment for $800 in favor of each of the plaintiffs. And thereupon Forbes and Allers applied to a judge of this court for a writ of error and *supersedeas;* which was awarded.

The defendants took three bills of exceptions to rulings of the court.

The first of these exceptions was to the admission in evidence of the record in the case of Forbes & Allers against Graviller & Co. The ground of the objection to the evidence was not stated in the court below. In this court it was objected to on the ground of variance between that and the declaration, in that the latter charged that the plaintiffs were arrested by order of Crew, the justice, and the record showed the arrest was under the process in the cause

issued by the clerk of the court. And further, that the declaration stated the debt claimed by Forbes & Allers before the justice was $409.85, and the debt claimed in their declaration was $412.77.

The second exception was to the refusal of the court to give instructions asked for by the defendants; and the giving of other instructions by the court. After all the evidence had been introduced, both parties asked for six instructions, which the court refused to give, and gave three of its own. The instructions of the defendants are as follows:

### No. 1.

The court instructs the jury that in order to maintain the action, all the material allegations must be proved as laid in the declaration, and that the averment that the said Forbes & Allers unlawfully, maliciously and without probable cause procured John Mann, Jr., to go before one Wm. Hall Crew, one of the justices of the peace for the city of Richmond, and without reasonable or even any probable cause whatever to make the affidavit upon which the *capias* was issued and the arrest made, is a material allegation.

### No. 2.

If the jury believe from the evidence that the defendants, at the time of the institution of the suit in their name against the plaintiffs in this suit, believed that the sum of money therein claimed, or any part thereof, was due them; and if the jury believe also, from the evidence, that at the time of the issuing of the *capias* in said suit, the plaintiffs acted *bona fide*, and upon such reasonable apparent grounds as justified them in believing that the facts existed which would authorize its issue, then they must find for the defendants, although it might afterwards turn out that the facts upon which they based their action were not true, and although it might be a fact that the said Graviller and Hagman were not about to quit the State.

### No. 3.

And the court further instructs the jury that before the said Graviller and Hagman can recover in this suit, the said Graviller and Hagman must show, to the satisfaction of the jury, that John Mann, Jr., was actuated by malice, and proceeded without probable cause, in the institution of the suit in the name and in the behalf of Forbes & Allers against the said Graviller and Hagman; and that the existence of such malice, and the want of probable cause, were known to the said Forbes & Allers at the time of the institution of said suit against, and the arrest of, said Graviller and Hagman.

### No. 4.

And the court further instructs the jury that if they believe from the evidence that the said John Mann, Jr., though acting as the agent of Forbes and Allers, for the purpose of conducting the legitimate business of the Baltimore Brick Company, in consulting with counsel in regard to the institution of the suit for the recovery of said claim, and in regard to the holding said Graviller and Hagman to bail in said suit, omitted, without the knowledge or consent of said Forbes & Allers, to state to said counsel any of the facts in relation to the said claim, or withheld from said counsel information, with intent to procure an opinion from said counsel in favor of the institution of said suit, and the arrest of said Graviller and Hagman, then the said Forbes & Allers are not responsible for the said conduct of the said John Mann, Jr.

### No. 5.

The court instructs the jury that before the plaintiffs can recover in this action they must believe from the evidence that the suit by Forbes & Allers v. Graviller and Hagman, in which the said Graviller and Hagman were held to bail, was instituted maliciously and without probable cause, and

that both of these must concur. And the court further instructs the jury that in order to sustain the averment of malice, it must be shown by the evidence that the affidavit upon which the *capias* against the said Graviller and Hagman was issued, was wilfully false. And the court further instructs the jury that if the plaintiffs in the action of Forbes & Allers against Graviller and Hagman, submitted a full and correct statement of their case as they *bona fide* understood it to legal counsel, and acted upon their advice in the institution of said suit, and the issuing of the *capias* therein, then such advice thereupon given, furnishes sufficient probable cause for proceeding accordingly.

### No. 6.

The court instructs the jury that though they may believe from the evidence that the plaintiffs in this suit were arrested and held to bail for a debt not due, or for more than was due, yet still they must find for the defendants, unless they shall also believe from the evidence that the arrest of the said plaintiffs and the holding them to bail was done maliciously and without probable cause, and that the question of malice is for the jury ; and that to sustain this averment the charge must be shown to have been wilfully false.

Instructions given by the court :

### First.

The jury are instructed that the plaintiff cannot recover in this action unless they are satisfied from the evidence that the defendants instituted the suit of August 14th, 1876, against Graviller & Co., and sued out the *capias* under which the plaintiff was arrested and imprisoned without any probable cause and with malice ; but if they shall believe that at the time of instituting that suit, and suing out the *capias*, the defendants had no reasonable and probable cause for believing that the plaintiff was about to quit the State, unless

he was forthwith apprehended, the jury may infer malice from their action; and if they think such inference a reasonable one from all the evidence, they should find for the plaintiff.

### Second.

If the jury shall believe from the evidence that the defendants were not residents of this State, and conducted business here through the agency of John Mann, Jr., and that the said Mann was authorized to advise with designated counsel, and to act under advice of such counsel in instituting any legal proceedings for the collection of debts to the defendants incurred in such business, and that the said Mann did advise with such counsel, and by their advice instituted on the 14th day of August, 1876, suit against Graviller & Co. in this cause, and sued out the *capias* under which the plaintiff was arrested and imprisoned, the jury are instructed that the defendants are responsible to the plaintiff for the action of the said Mann in the premises; but if the jury shall further believe that the said Mann, in so advising with counsel, made a full, correct and honest disclosure to counsel of all the material facts in the matter, they are instructed that the advice of counsel to institute the said suit, and sue out the said *capias*, is evidence of probable cause for such action, and they must find for the defendants.

### Third.

The jury are instructed, that under the contract between the Baltimore Brick Company and F. Graviller & Co., of date of June 1st, 1876, the Baltimore Brick Company was bound to deliver to the said Graviller & Co. from time to time so many bricks as should be needed to complete their contract with the United States government, provided Graviller & Co. paid to them *eighty per cent.* of contract price for such bricks as were laid in the wall when the United States government should make payment to Graviller &

Co.; and if the jury shall believe that when the suit of said company against Graviller & Co. was instituted August 14th, 1876, the said Graviller & Co. had paid to them in full *eighty per cent.* of the price of such bricks laid in the wall as they had been paid for by the United States government, and that the Brick Company refused to make further deliveries of brick to Graviller & Co. without security for payment, the jury are instructed that the Brick Company thereby violated their contract, and that they had no cause of action against Graviller & Co. when their suit of August 14th, 1876, was instituted; and unless the jury shall be satisfied that the defendants were excused by the advice of counsel, given under such circumstances as set out in the second instructions. If the jury shall further believe that in instituting such suit, and in suing out the *capias* under which the plaintiff was arrested and imprisoned, the said Mann acted with a willful disregard of the rights of the plaintiff in order to coerce from him such payment or security for payment for the bricks delivered, as he believed the Brick Company was honestly entitled to, the jury should find for the plaintiff.

The third exception is to the refusal of the court to set aside the verdict and grant the defendants a new trial, on the ground that the verdict was contrary to the evidence. It is impossible to set out all the facts, but the case is sufficiently stated by Judge *Burks* in his opinion.

*Wise & Cosby* and *Guy & Gilliam,* for the appellants.

*Joseph Bryan* and *John B. Young,* for the appellees.

BURKS, J., delivered the opinion of the court.

The cause of action and the questions to be decided in each of these cases are precisely the same. They were

argued as one cause, and will be so considered and disposed of in this opinion.

If there was no error in any of the other rulings complained of, I am decidedly of opinion that there was none in the refusal of the court to set aside the verdict of the jury and grant the defendants a new trial. Through their agent, David Mann, and on his affidavit, they procured from a justice of the peace an order to hold each of the plaintiffs to bail in the sum of $800 for an alleged debt of about $400. Upon this order they sued out a *capias*, by virtue of which the plaintiffs were arrested, and being unable to give the bond with security required by the statute they were committed to jail, and there confined for nearly two months, when, the action in which the *capias* was issued coming to trial, and after the jury had been sworn to try the issue and the evidence partly heard, a non-suit being suffered, they were discharged from further custody and the suit was never renewed.

They brought their several actions to recover damages for their arrest and detention, alleging that the proceeding against them was without probable cause and malicious.

The defendants resided in Baltimore, Maryland, and Mann, who resided in Virginia, was their general agent in the management of their business, including the collection of debts in this State. He acted by their authority in the institution and prosecution of the proceeding complained of, and they are as responsible for his conduct in the matter as if they had acted in person. His acts were their acts. It cannot be justly claimed for them that in the particular matter which is the ground of action he exceeded his authority, and that therefore they are not accountable; for it distinctly appears that after they had been apprised of the arrest and imprisonment through Mann's agency, they approved and adopted what had been done by him. Indeed, before any contract had been consummated between

the plaintiffs and defendants for the sale and delivery of
the bricks, one of the defendants (they being partners)
cautioned their agent to be very careful, as "government
contractors," he said, "were often slippery fellows"; and
about ten days after the arrest he came to Richmond, and
was there informed by the agent that he had the two gov-
ernment contractors (the plaintiffs) in jail at the suit and
on account of the firm.   He made no inquiry as to the
grounds of the arrest, gave no directions and took no steps
for their relief or discharge, but merely remarked "that it
had resulted as he expected."

This was a virtual ratification and adoption of what had
been done by the agent on the principle *omnis ratihabitio
retrotrahitur et mandato priori æquiparatur*, which applies as
well to a tort, when done to the use or for the benefit of
him who subsequently adopts it, as to a matter of contract.
It was said by Lord Coke that "he that agreeth to a tres-
pass after it is done is no trespasser, *unless* the trespass was
done *to his use* or *for his benefit*, and then his agreement
subsequent amounteth to a commandment."   4 Inst. 317.
So that the test of liability in such a case is said to be the
consideration whether the act was originally intended to
be done *to the use* or *for the benefit* of the party who is after-
wards said to have ratified it.   Broom's Leg. Max. 873
(marg.).

Chief Justice Tindall, in *Wilson* v. *Tumman*, 6 Man. & Gr.
(46 Eng. C. L. R.) 236, states the rule more fully thus:
"That an act done for another by a person not assuming to
act for himself, but for such other person, though without
any precedent authority whatever, becomes the act of the
principal if subsequently ratified by him, is the known and
well-established rule of law.   In that case the principal is
bound by the act, whether it be for his detriment or advan-
tage, and whether it be founded on a tort or a contract, to
the same extent as by and with all the consequences which

· follow from the same act done by his previous authority." For further illustrations of the application of the principle see Broom's Leg. Max. 866 *et seq.;* Cooley on Torts, 127–131.

The case of *Lewis* v. *Read*, 13 Mees. & Welsb. 834, cited by both of these authors, has a strong bearing on the case in judgment. As stated, a landlord authorized bailiffs to distrain for rent due to him from the tenant of a farm, directing them not to take anything except on the demised premises. The bailiffs distrained cattle of another person (supposing them to be the tenant's) beyond the boundary of the farm; the cattle were sold, and the landlord received the proceeds. It was held that the landlord was not liable in trover for the value of the cattle, *unless* it were found by the jury that he ratified the act of the bailiffs with the knowledge of the irregularity, *or* that *he chose, without inquiry,* to take the risk upon himself, and to adopt the whole of their acts.

Now, the defendants in the present case were partners in business and each therefore was agent for the other in the partnership matters, and when one of them received information from their common agent, that the latter had in their names and for their use and benefit instituted a suit against the plaintiffs and caused them to be arrested and detained in prison, they chose, "without inquiry" (as it is expressly proved), to take the risk upon themselves, and to adopt their agent's acts as their own. They certainly ought to be in fact, as in law they are, bound by these acts.

There was no dispute about the facts of the arrest, detention in prison and final discharge of the plaintiffs, and the termination of the action against them. The main controversy before the jury was, whether the proceeding was without probable cause and malicious; and the burden of proof was on the plaintiffs. Various definitions of "probable cause," when a question, as it always is, in suits for malicious prosecution, are given by judges and text-writers.

Some of them are stated in the opinion in *Scott & Boyd* v. *Shelor*, 28 Gratt. 891, to which I beg to refer. Modifying the definition there approved as supported by the greatest weight of authority, when the action is for a malicious prosecution on a criminal charge, so as to adapt it to the present case, I should say that probable cause for a proceeding under the statute (Code of 1873, ch. 148, § 33) holding a defendant to bail and arresting and detaining him until the bond required by the law has been given or until he is otherwise legally discharged, is a *bona fide* belief by the plaintiff (or his agent acting for him) in the existence of the facts essential under the law for such a proceeding, founded on such circumstances within his knowledge at the time the proceeding is taken, as would warrant a man of ordinary caution, prudence and judgment, under the same circumstances, to entertain such belief. In other words, applying the rule to the parties in this case, Mann must have believed when he made his affidavit that the facts sworn to therein were true ; that is, that the plaintiffs in the then suit had cause of action against the defendants in that suit for the amount stated in the affidavit, and that there was probable cause for believing that the said defendants were about to quit the State unless forthwith apprehended; and, taking him to be a man of common prudence, he must have been justified in so believing from the facts and circumstances then known to him. It is not necessary that the facts sworn to should have been absolutely true, but it is necessary that he should have believed they were true, and that as a prudent man, under the circumstances then known to him, he was warranted in entertaining that belief. *Scott & Boyd* v. *Shelor*, *supra* (pp. 905, 906); *Spengler* v. *Davy*, 15 Gratt. 381, 388, 389; 2 Greenl. on Ev. § 455.

The test of probable cause, says a distinguished jurist, is to be applied as of the time when the action complained of was taken; and if upon the facts *then known*, the party

had no probable cause for action, it will be no protection to him that facts came to his knowledge afterwards that might have constituted a justification had he been aware of them. Neither is he justified, if he knew the facts, but *did not believe them.* Cooley on Torts, 183.

As to whether the plaintiffs intended to quit the State or not, the evidence is somewhat conflicting. Upon that point the judge certifies the evidence, not the facts ; and according to the rule established by this court, we must, on this branch of the case, at least, discard the evidence of the defendants (the excepting party) and give full faith and credit to that of the plaintiffs. This done, there could be no pretext for the belief that there was any intention to quit the State. But if it were otherwise, it was still essential to the existence of probable cause for the proceeding taken, that the affiant *bona fide* believed that there was present cause of action when the suit was instituted and the *capias* issued, and that such belief was justified by the circumstance then known or apparent to him. I say "*present* cause," because a defendant can be held to bail only in a pending suit, which, in an action at law, necessarily implies a demand presently due for which the suit is prosecuted.

It is too clear to admit of serious question, that when the suit was instituted there was then no cause of action whatever, and it would seem just as clear that Mann must have known it. The summons commencing the suit was issued August 14, 1876, and contemporaneously the *capias* was sued out and the plaintiffs (in the present cause) were forthwith arrested. At that time there was nothing due from them to the defendants in these causes. On the contrary, it is proved that the plaintiffs had paid to the defendants every dollar then due them under their contract and there was a balance owing to the plaintiffs in the hands of Mann, the agent. The contention on the part of the defendants was, that the original written contract between the parties had

been abrogated and a new parol agreement had been sub-
stituted. If such had been the case, still under the alleged
new agreement there was nothing due the defendants. It
varied from the written agreement in one single particular
only—namely, the size of the bricks to be furnished. In
all other respects, the agreements were the same. There
was no change in the price of the bricks, nor in the times
or terms of payment. This was shown in his testimony
by Mann, himself, who was perfectly cognizant of all the
facts.

But it is contended that the defendants, in causing the
arrest, through their agent, acted under the advice of coun-
sel, and that such advice stands in law for probable cause,
or is sufficient evidence of it.

It may be conceded that a party, in some cases, may act
on the advice of counsel, *bona fide* sought and obtained,
without incurring liability for damages as for a tort, even
though the counsel may have mistaken the law. But to
justify, something more than the mere advice must be
made to appear. The facts must be shown on which the
advice was given. The plaintiffs had made out a strong
case of the absence of probable cause, and the defendants,
to avoid the consequences, attempted to prove that the
arrest for which they were sued was made under the advice
of their counsel. It was incumbent on them to show under
what circumstances and on what facts that advice was
given. There is no doubt that their counsel advised the
proceeding set on foot by them, but there is an utter absence
of any proof of the facts communicated to him on which
his opinion was founded. Their agent consulted with him
and laid before him their books and papers, but what
these books and papers contained and what statement of
facts was made to him the record does not disclose. It is
a significant circumstance that though Mann was examined
by the defendants as a witness he did not state what facts

he communicated to the counsel; and it is also worthy of observation that the counsel on whose advice, it is said, the proceeding was taken, and who must have known the facts on which he gave the advice, was not examined as a witness at all, though present at the trial and defending the actions. It seems to me that the jury had the right to infer either that material facts were intentionally withheld from the counsel, or that the omission to state them, if such was the fact, resulted from gross negligence. In either case the advice given furnished no protection. It would seem to be incredible, if all the material facts developed in this record, or such as it is shown were well known to Mann at the time he consulted counsel, had been communicated to that counsel, learned in the law as he is, that he would have advised the proceeding under which the defendants ware arrested.

The absence of probable cause was clearly made out and, I think, the presence of malice as plainly established.

Malice may be, and generally is, inferred from want of probable cause, though, it is said, it is not a necessary inference. It is always a question for the jury under all the circumstances of the case.

The term "malice," in this form of action, says Parke, J., in *Mitchell* v. *Jenkins*, 5 Barn. & Ad. 588, 594, is not to be considered in the sense of spite or hatred against an individual, but of *malus animus*, and as denoting that the party is actuated by improper and indirect motives.

Speaking with reference to malice in actions for malicious prosecutions, Judge Cooley remarks that legal malice is made out by showing that the proceeding was instituted from any improper motive, and it is not essential that actual malevolence or corrupt design be shown. Cooley on Torts, 185.

And Judge Daniel, in *Spengler* v. *Davy*, 15 Gratt. 381, 394, says that the improper motive, or want of proper motive

inferrible from a wrongful act, based upon no reasonable ground, constitutes of itself all the malice deemed essential in law to the maintenance of the action (for malicious prosecution). See also *Scott & Boyd* v. *Shelor*, 28 Gratt. 891, 909.

The motive which prompted the harsh proceeding in this case would seem to have been to coerce the plaintiffs, by abuse of legal process, to pay a debt when nothing was due, or secure it before it was payable. And there is not wanting evidence of express malice. While the plaintiffs were in jail one of their creditors applied to the agent of the defendants to know how he could get his debt paid. The agent replied that "he did not know, but that he had Graviller and Hagman (the plaintiffs) in jail, and intended to keep them there and feed them until he got satisfaction out of them." There are other circumstances pointing in the same direction, but they need not be noticed.

So much for the exception to the refusal of the court to set aside the verdict of the jury on the ground that it was contrary to the evidence.

I proceed to consider the other exceptions; and, first, in regard to the instructions to the jury. The plaintiff, in each of the cases, prayed for six, and the defendants for the same number. The court rejected all on both sides and gave three of its own.

To the first of these three, two objections are made. The jury were very properly instructed that the plaintiff was not entitled to recover without satisfactory proof that the arrest was made without probable cause and with malice, and in what follows the judge uses the terms "reasonable *and* probable cause." It is objected that this was error; that "reasonable *and* probable cause" are not the precise equivalents of "probable cause." The objection savors of extreme technicality, and does not strike me as having much force. Without attempting to draw a distinction, if any there be, between what is "reasonable" and what is

"probable," as a justifying cause for the arrest, it may be remarked that many eminent judges and law writers seem to have considered that there was no substantial distinction. For instance, Baron Parke, in *Mitchell* v. *Williams,* 11 Mees. & Welsb. 205, speaks of "the absence of reasonable *or* probable cause." And in another English case—*Wren* v. *Heslop,* 12 Jur. 600—it was left to the jury to find "whether the defendant believed that there was *reasonable and probable cause* for preferring the indictment." And Greenleaf uses the language that "it must appear that the defendant knew of the existence of those facts which tends to show *reasonable and probable cause,*" &c. But if the term "reasonable" is not the equivalent of "probable," as the words were employed in the instruction, the error, if of any moment, was to the prejudice of the plaintiffs only by imposing upon them a greater degree of proof than the law required. Of this the defendants cannot complain. It is also insisted that the instruction was further erroneous in directing the jury *imperatively* to find for the plaintiff if they could reasonably infer malice from all the evidence in the case, thus, as alleged, depriving the defendants of the application by the jury of an inference of the absence of malice, which might be equally reasonable with an inference of the existence of malice.

I think this objection is based on a misconception of the instruction. It is not worded and framed as carefully as it might have been, but taken altogether it amounts to this in substance, that the plaintiff was not entitled to recover unless the jury believed from the evidence that he was arrested without probable cause and with malice ; and if they were satisfied that he was arrested without reasonable and probable cause, they might infer malice, if the inference was a reasonable one from all the evidence in the cause. The direction to "find for the plaintiff," with which the instruction concludes, must be construed as based not only

on the finding of malice which might be inferred if the inference was a reasonable one from all the evidence, but also on the finding of the existence of probable cause. The latter part of the instruction seems to have been intended to guard the jury against the error, into which they were apt to fall, of supposing that *express* malice must be proved, and to inform them that the malice necessary as an element in the plaintiff's cause of action might be inferred, and at the same time to caution them that the inference, if drawn, should be a reasonable one from all the evidence in the case. I think there was no error in giving this instruction.

The second is in the following words: "If the jury believe from the evidence that the defendants were not residents of this State and conducted business here through the agency of John Mann, Jr., and that the said Mann was authorized to advise with designated counsel, and to act under advice of such counsel in instituting any legal proceedings for the collection of debts to the defendants incurred in such business, and that the said Mann did advise with such counsel, and by their advice instituted on the 14th day of August, 1876, suit against Graviller & Co. in this cause, and sued out the *capias* under which the plaintiff was arrested and imprisoned, the jury are instructed that the defendants are responsible to the plaintiff for the action of the said Mann in the premises; but if the jury shall further believe that the said Mann, in so advising with counsel, made a full, correct and honest disclosure to counsel of all the material facts in the matter they are instructed that the advice of counsel to institute the said suit, and sue out the said *capias*, is evidence of probable cause for such action, and they must find for the defendants."

The latter part of this instruction is objected to as erroneous, and it is contended that the law is correctly propounded in the fifth instruction asked for by the defend-

ants, which was rejected. So much of that instruction as relates to the question now to be considered is in these words: "And the court further instructs the jury, that if the plaintiffs in the action of Forbes and Allers against Graviller and Hagman, submitted a full and correct statement of their case, as they understood it, to legal counsel, and acted upon their advice in the institution of said suit, and the issuing of the *capias* therein, then such advice thereupon given, furnishes sufficient probable cause for proceeding accordingly."

Comparing the two instructions, it will be observed that both declare that the statements to counsel must have been "full and correct," but the essential difference between them is, that the instruction rejected requires "a full and correct statement of *their case, as the defendants bona fide understood it,*" while the instruction given requires a full, consistent statement by the defendants of *all* the *material facts,* without reference to their *understanding* of *their case.*

And it is earnestly insisted by learned counsel, in support of the doctrine affirmed in the rejected instruction, that if a party makes an honest disclosure of the facts of his *case, as he understands it,* to counsel, though neither a "full" nor a "correct" disclosure of the facts of the *case,* as the *case* is understood by others, that the advice of counsel—instruments of the law, instructed and licensed for the very purpose—would still be at least probable cause for pursuing the course advised.

I cannot give my assent to this proposition as stated. It seems to be opposed to reason and sound policy, and lacks direct authority to support it. If a party acts on his own judgment in any proceeding, the facts and circumstances, which enter into the question of probable cause in that case, are such as were *known to him* at the time of the proceeding. This seems to be settled law. If the advice of counsel is relied on to shield him from consequences to

which he would otherwise be exposed, and it is to have that effect, though the law be mistaken, surely it is nothing more than reasonable that he be required to put the counsel in possession of the *facts* as they are *known to himself ;* and this can only be done by his giving a full and correct statement of *those facts.* These are the facts that make up "his case" to be submitted, however he understood it. Good faith is necessary—it is indispensable—but that is not all ; due care also is to be taken that the opinion which is to justify shall be founded on the same facts which would control the question of responsibility if no such opinion had been sought and given.

It is agreed, says Greenleaf, that if a full and correct statement of the case has been submitted to legal counsel, the advice thereupon given furnishes sufficient probable cause for proceeding accordingly. But he proceeds to say that whether the party's omission to state to his counsel a fact well known, but honestly supposed not to be material, or his omission through ignorance to state a material fact which actually existed, will render the advice of counsel unavailable to him as evidence of probable cause, does not appear to have been expressly decided. Referring then to the case of *Stone* v. *Swift,* 4 Pick. 389, he says: The rule there recognized *seems* broad enough to protect any party acting in good faith and without gross negligence. In that case it is laid down that if a party "did *not withhold* any information from his counsel, *with the intent* to procure an opinion that might operate to shelter and protect him against a suit, but, on the contrary, if he, being doubtful of his legal rights, consulted learned counsel with a view to ascertain them, and afterwards pursued the course pointed out by his legal adviser, he is not liable to this action, notwithstanding his counsel may have mistaken the law." 2 Greenl. Ev. § 459. It is said of that case in note (1) that "no question was made whether any material fact had been

'omitted"; and it may also be remarked that while the opinion requires that the party shall not *mala fide withhold* any information from his counsel, it does not indicate the extent and character of the information which *should be given.* At all events, as admitted, it is not a direct decision on the very point now in question.

On this subject Judge Cooley, in his recent work on Torts (to which reference has been made several times already), p. 183, holds the following language: "It may, perhaps, turn out that the complainant, instead of relying upon his own judgment, has taken the advice of counsel learned in the law and acted upon that. This should be safe and more reliable than his own judgment, not only because it is the advice of one who can view the facts calmly and dispassionately, but because he is capable of judging of the facts in their legal bearings. A prudent man is therefore expected to take such advice; and when he does so and *places all the facts before his counsel,* and acts upon his opinion, proof of the fact makes out a case of probable cause, *provided* the disclosure appears to have been *full and fair, and* not to have withheld any of the material facts. But the advice must be that of a person accepted and licensed by the courts as one learned in the law and competent to be adviser to clients and to the court."

Adjudged cases sustaining this general view are numerous. The following were cited in argument: *Ash* v. *Marlow,* 20 Ohio R. 119; *Ross* v. *Innis,* 26 Ill. R. 259; *Ames* v. *Rathbun,* 37 How. (N. Y.) 289; *Williams* v. *Vanmeter,* 8 Mo. R. 339; *Leaird* v. *Davis,* 17 Ala. 27; *Wicker* v. *Hotchkiss,* 62 Ill. 107; *Anderson* v. *Friend,* 71 Ill. R. 475; *Sappington* v. *Watson,* 50 Mo. R. 83. See also 1 Hilliard on Torts, 480; *Hill v. Palm,* 38 Mo. R. 13, 21; *Sharpe* v. *Johnston,* 59 Mo. R. 557; *Cooper* v. *Utterback,* 37 Maryl. R. 282; *Ravenger* v. *Mackintosh,* 2 Barn. & Cresw. 225, 226.

It is said in *Sharpe* v. *Johnston and others, supra,* that the

party "must consult counsel in good faith, and not only learn all the ascertainable facts bearing upon the supposed offence, but communicate them, however immaterial he may deem them to be, to his legal adviser." And in *Hill* v. *Palm, supra,* that " he must not omit to state to his counsel a fact well known to him, but which he honestly supposed was not material."

The proposition fairly to be deduced from these cases and others is, that when a party relies on the advice of counsel as furnishing probable cause for a proceeding, to give it that effect it should appear that he presented to the counsel a full, correct and honest statement of all the material facts of the case, at least so far as those facts were within his knowledge. This principle was observed in the instruction under consideration, except that the " disclosure" therein mentioned was not in terms referred to facts within the knowledge of the defendants. This omission, however, could not prejudice the defendants; for all the material facts, as the record shows, were within their knowledge, or, which is the same thing, within the knowledge of their recognized agent, who acted for them; and in justice to the court and the parties, the instruction should be considered as having been given with reference to this state of the case.

In what has been said I desire to be understood as affirming that the communication required to be made to the counsel should embrace all the material facts within the knowledge of the defendant; but whether the communication should go further and extend to all such material facts as, though not known to the defendant, might by the use of reasonable diligence have been ascertained by him, is a question not necessarily arising in this case as it is presented by the record, and I therefore give no opinion upon it. The cases in Illinois and Missouri seem to favor this extension of the rule.

In regard to the third instruction, little need be said.  It was founded mainly on the construction of the written contract between the parties, and the jury were told that upon a certain state of facts, if found by them to be true, the defendants had no cause of action against the plaintiffs when the suit of August 14th, 1876, was instituted.  It is objected that this instruction disregarded the alleged verbal agreement between the parties and the revocation of the power of attorney referred to in the proceedings, and withdrew those matters from the consideration of the jury.  The answer is, that if those matters had been embraced in the instruction upon the facts of the case the result must have been precisely the same.  I have already shown that there was no difference, except in a single particular, between the written contract and the parol agreement, and that difference did not substantially affect the cause of action.  If there was no cause of action under the former, it is equally true that there was none under the latter.  The power of attorney was no part of either of the agreements.  It was given after the written contract was entered into to secure to the defendants their money as it became due under that contract and according to the terms of payment therein provided, which were the same in all respects as under the parol agreement.  Its revocation could not affect the rights and obligations of the parties under either of the agreements.

As to the instructions asked for by the defendants and rejected by the court.

The first, third and fourth present the question as to the responsibility of the defendants for the acts of their agent, Mann.  They were very well calculated to mislead the jury and were clearly erroneous.  They are based on the assumption that if Mann acted without *previous authority* in the particulars mentioned, the defendants were not responsible for his acts; thus disregarding the evidence of a *subsequent rati-*

*fication,* which has already been commented upon. Besides, the question of responsibility, in the light of the evidence, was properly presented in the second instruction given by the court.

I do not discover any error in the second instruction, which was rejected. It declared in effect that if the facts stated therein were found by the jury, they amounted to probable cause. The question of probable cause is a mixed proposition of law and fact. The *existence* of the circumstances, which enter into the proposition, is a question of *fact* for the jury—their *sufficiency,* a question of *law* for the court. *Womack* v. *Circle,* 29 Gratt. p. 203. The instruction might perhaps have been properly given as asked for. But the whole question of probable cause, as well as the question of malice, was submitted to the jury under the first instruction of the court. Besides, the evidence of the want of probable cause was so very clear and conclusive, that if the instruction had been given and the jury had found the facts as stated in the instruction, the court would have been bound to set aside the verdict and grant a new trial. Under such circumstances, it would have been a vain thing to give the instruction, and therefore to refuse it was not error for which this judgment should be reversed by this court.

The fifth instruction lays down a proposition of law in regard to the advice of counsel, which has been considered and pronounced erroneous. It also declares, that to sustain the averment of malice it must be shown that the affidavit upon which the *capias* against the plaintiff was issued was *wilfully false.* The sixth instruction affirms substantially the same doctrine.

The proposition is certainly not without respectable authority to support it (2 Greenl. Ev., § 453), but it does not not appear to me to be sound on principle and consistent with the idea of legal malice, as it has been defined and is generally understood. As malice, in an action like this, is

an improper motive or the want of proper motive in the proceeding complained of and may be inferred (see definitions given in a previous part of this opinion), clearly, as it seems to me, it may exist, and yet the charge on which the proceeding is founded not be *wilfully* false.

A party preferring a charge may believe it to be true, but because the circumstances are not sufficient to warrant a prudent man in entertaining that belief, there is not probable cause; and yet such a party may be influenced by an improper motive and therefore chargeable with malice in a legal sense. If the doctrine laid down in the instruction be sound, a party could never be convicted of malice, if he believed the charge to be true, however unreasonable the grounds of his belief and by whatever motives he was actuated.

This disposes of all the questions in the two cases, except the one growing out of the alleged variance between the allegations of the declaration and the record offered in evidence by the plaintiffs in each case and permitted to go to the jury, against the objections of the defendants.

There is no doubt the plaintiff had the right to use the *whole* record as evidence, unless the objection on the ground of variance can be maintained. *Parsons* v. *Harper*, 16 Gratt. 64, 75, 76.

The declaration alleges an arrest by virtue of process described as issued by William Hall Crew, a justice of the peace, while the record shows an arrest under a *capias* issued by the clerk of the circuit court of Henrico county. The principal of the debt demanded in the suit, in which the process for arrest was issued, is described in the declaration as $409.85, whereas the amount stated in the record is $412.77. These are the only discrepancies pointed out. I do not regard them as material in the case as presented.

The general statement of the rule is, that the *allegata* and *probata* must correspond. The chief reason for the require-

ment is, that if the defendant should be again sued for the same cause, the record of the verdict and judgment in the former action may be used as evidence to defeat a second recovery.

Can there be any doubt that if the plaintiff in this cause (for convenience I speak of the two causes as one) were to bring a second action, and his declaration was made to conform precisely to the record which was admitted in evidence, that the verdict and judgment in this suit could be successfully relied on as a bar to the recovery in the second action? The *whole* record was used as evidence, and by bill of exceptions made a part of the record of this case, which might be used in the second action to show the grounds of recovery in this.

While the discrepencies are apparent, it is manifest from an inspection of the *whole* record which was admitted as evidence, and comparing it with the declaration that by the process of arrest and the debt described in the declaration were intended the *capias* and debt mentioned in the record. The misdescription in the declaration was therefore harmless and immaterial.

It would be easy to show this if this opinion was not already too long, by comparing the various allegations of the declaration with the record, which supports them in all respects except in the two particulars which have been adverted to.

It appears that no special reason was assigned at the trial for the objection to the record as evidence, none was called for by opposing counsel or the court, and the judge certifies that he "understood that the *affidavit* was objected to on the ground that it did not show that it was procured by Forbes and Allers [the defendants]." If any such objection was made as understood by the circuit court, it has not been renewed here. If the grounds of variance now insisted on here had been disclosed at the trial, as they were not ma-

Forbes & Allers v. Hagman ; Same v. Graviller.

terial to the merits of the case, and the defendants could not have been prejudiced thereby, they might have been removed at once by amending the declaration at the bar, on leave given for the purpose by the court, without postponing the trial.   Code of 1873, ch. 173, § 7.

Upon the whole matter in both of these cases, I am of opinion that there is no error in any of the rulings of the circuit court for which the judgments should be reversed, and that they should be severally affirmed.

JUDGMENT AFFIRMED.