## JUSTIFICATION FOR AN ARREST.

[Circuit Court of Lucas County.]

HENRY C. EIHLERT v. WILLIAM GOMMOLL.

Decided, June 20, 1902.

*Malicious Prosecution—Advice of Counsel—A Complete Defense Against —Should be Pleaded as a Defense.*

1. Where one causing an arrest proceeds in good faith upon the advice of one learned in the law, and especially where the advice is by a judge having responsibilities in the premises, and no facts appear which were not brought to the attention of the one giving the advice, such advice is a complete defense in an action for malicious prosecution based upon the arrest.

2. It is the proper practice that such advice be pleaded as an affirmative defense, but the omission to plead it is immaterial, where the evidence was introduced without objection, and the court charged with reference thereto and the jury acted upon it.

PARKER, J.; HAYNES, J., and HULL, J., concur.

Heard on error.

In the court below this was a civil action for damages on account of alleged malicious prosecution, the plaintiff below being

William Gommoll and the defendant below being Henry A. C. Eihlert. The trial resulted in a verdict in favor of the plaintiff below for about $400. Motion for a new trial was made upon various grounds, which was overruled, and judgment was entered upon the verdict. Defendant below prosecutes error and insists that the verdict is against the weight of the evidence. He also contends that there was error upon the trial in the admission and rejection of evidence and in the charge of the court and in the refusal of the court to charge certain propositions. I will say, in passing, that we do not find in the bill of exceptons any requests to charge, either before or after argument, which were refused by the court.

The history of the matter out of which this suit develops, briefly stated, is this: The father of William Gommoll was the father of a number of small children. Complaint was made in the probate court of this county of his treatment of his small children; that he was cruel; and as the result of a proceeding in that court, Henry A. C. Eihlert was appointed guardian of these children. It appears that the hearing, or at some hearing in that court, the father being desirous to take the children home and not be deprived of their custody by the guardian, and the son, William Gommell, also desiring that this might be accomplished, William promised the guardian and the court that if his father might be permitted to take the children home and have their custody, he would undertake to see to it that they were well and property treated; and in pursuance of that promise and arrangement, the father was permitted to retain the custody of his children. Subsequently other complaints were made, which came to the attention of the guardian, of further cruelty on the part of the father toward the children, whereupon the guardian, Eihlert, went to the residence of the father and undertook to possess himself of the children. His application for the children was denied by the father, and the efforts that he and the officer made to obtain the custody of the children were resisted by the father, although the parties did not come to any actual conflict, and he was obliged to go away without the children and resort to other measures to obtain possession of them.

On this occasion the son, William Gommell, was present, and his attitude towards the parties was such as to make Mr. Ehlert feel that he was aiding, abetting, encouraging and sustaining his father in his resistance to the application of Mr. Eihlert for the custody of the children. Of their conduct on these occasions, Mr. Eihlert made complaint to Probate Judge Millard; and he contends and testifies that he truthfully and fully stated all of the facts of these incidents to Judge Millard, and appealed to him for advice as to how he should proceed, and he testifies that he was advised by Judge Millard—who, it appears, was a reputable lawyer and who had been long in the practice of law before he became probate judge—to have these parties arrested as well as to take proper measures to obtain the custody of the children. He testifies that, proceeding upon this advice, which he regarded as valuable and safe, he filed an affidavit in one of the city courts, the affidavit being drawn by the clerk of that court, charging the father and son with having secreted these children and kept them from the custody of their lawful guardian, in violation of a penal statute.

It appears that the father and son were arrested upon this charge and were imprisoned and kept some time in custody, and the final result of the prosecution was that they were discharged; whereupon William Gommoll, the son, began this suit against Mr. Eihlert, charging him with having prosecuted him maliciously and without probable cause, and asking for damages.

I have spoken particularly of the incident of Mr. Eihlert going to Judge Millard for counsel, for upon that turns one of the important questions in this case. In his testimony, at page 82 of the record, Mr. Eihlert testifies, after relating the incident of going to the house and trying to obtain custody of the children, and after relating that he had come back to the office of Judge Millard, as follows:

"And when I seen, or we seen we could not get possession of the children, I went back and told Judge Millard that the children, my wards, had been mistreated and abused, and that I had went out and asked both the old man and his son William to give me the children, and that they had refused to do so, and I asked him * * * I told him I heard the old man hid the

girl. * * * I told the judge at that time, of course, that
he had locked the door and would not let me have the children.
And Judge Millard informed me, and, by the way, I know him
as a good attorney and high standing, and he has been probate
judge of this county for many years, I asked him for his valu-
able advice, what to do in the case; he said to me, 'Why, have
them arrested, first; then go and get the children.' "

Farther along he testifies more fully as to the information he
gave to Judge Millard, and he testifies in substance that he in-
formed him fully as to all the facts and that he received this
advice—really, as he states it, received this instruction—this
direction—from Judge Millard as to his duties and about how
he ought to proceed, as to what he was justified in doing and
what he was bound in duty to do.

Judge Millard was called as a witness by the plaintiff below,
and although, to some categorical questions, he answered that
he did not so advise, yet the form of the questions were such
that the judge might well so testify, and yet his testimony might
be entirely consistent with that of the defendant below upon
this point; and upon the full examination of Judge Millard,
taking the substance of all his testimony, both direct and by
the way of cross-examination, it can not be said fairly that he
denied having given such advice in this transaction, though as
to the precise fact of advising it he says that his recollection is
very much at fault, at least that it is not clear or certain.

As the testimony stood, however, certain questions of fact
were to be submitted to the jury, i. e., whether the defendant
below—the plaintiff in error—had gone to Judge Millard in
good faith to find out what he might do, or what he ought to
do in the premises; whether he had truthfully and fairly stated
all the facts to Judge Millard; whether he had received this
advice from Judge Millard, and whether he had proceeded upon
the faith of it.

And because of that issue a question of law is involved here,
i. e., what instruction should have been given to the jury by the
trial judge as to their duty in the premises in the event that
they should find that the story of the defendant below in this
respect was true. Upon that point the trial judge charged the
jury as follows:

"Mr. Eihlert brings into this case a proper fact and submits it to the consideration of the jury. And that is his conduct relative to his having consulted Judge Millard in regard to this matter. It is the law that if a man, before he has a warrant issued for the arrest of another, goes to a lawyer, some one learned in the law, and lays before him all the facts and takes his advice as to whether the man has been guilty of a crime that he describes or not, that fact may be considered by the jury, and is held by some courts to be a complete defense; by others, not; but it may be considered by the jury as tending to show that he has reasonable and probable cause upon which to act, and as tending to rebut any malice that may have been alleged and attempted to be proven in the case. A man is not authorized to consult an attorney and withhold from him the real facts, or distort the facts, or tell him part of the facts, then secure his advice and act upon it, and then undertake to shield himself behind that. In order to protect himself by consulting an attorney or any one learned in the law, it is his duty to make known to the party that he consults all the facts in the case, in order that he may advise him correctly, because he may not advise him correctly if he does not know all the facts. So it is a question in this case for the jury to consider what Mr. Eihlert did with reference to consulting Judge Millard, and to what extent he disclosed the facts to Judge Millard; to what extent he was advised by Judge Millard to do as he did in the case."

Now it will be observed that while the trial judge stated to the jury that it is the law in some jurisdictions—the law as laid down by some courts—that these facts testified to by plaintiff in error would be a complete defense, he proceeds to lay down as the law of this case, in effect, that it is not a complete defense, but that "it may be considered by the jury as tending to show that he has reasonable and probable cause upon which to act and as tending to rebut any malice that may have been alleged and attempted to be proven in this case."

And that is all the construction he authorizes the jury to give to these facts, if they find them to be as stated by the defendant below.

In this we think the learned judge was in error. We think it is the law of this state that where it is shown that the prosecutor in good faith sought, obtained and proceeded upon the faith of the advice of counsel learned in the law, especially

where such counsel is a judge of a court having certain responsibilities and certain duties in the premises, without any additional facts having been brought to his attention after he had received the advice that would tend to qualify it, or qualify the facts upon which the advice was given, such advice is a complete justification; that it is a complete defense; that it is not merely evidence to be considered by the jury as tending to show that he had reasonable and probable cause upon which to act and as tending to rebut any malice that may have been alleged or shown in the case.

Some authorities on this question are collected in 4 Wait Act. and Def., 354, 355, and I will read a part of these:

"The defendant may also rebut the presumption of malice by showing that he acted under the advice of counsel. If the defendant communicated to counsel all the facts bearing upon the guilt or innocence of the accused of which he had knowledge, or could by reasonable diligence have ascertained, and, acting under the advice of such counsel, procures the accused to be indicted, he may plead the advice thus given as a defense in an action for malicious prosecution."

To this there are quite a large number of authorities cited.

"The fact that the defendant sought, received and acted upon the advice of counsel affords strong evidence that there was probable cause and that the prosecuton was entered into in good faith and without malice.

"While an honest reliance on the advice of counsel, who has been fully informed of the facts, may be a complete justification in an action for malicious prosecution, the advice of a lawyer who is a pettifogger will be no justification.   *   *   *   And a reliance upon the advice of a person who is not a counselor or attorney at law is incompetent to disprove malice."

And more to the same effect. Now it is true, as stated by the judge in the court below, that in some jurisdictions it is held that the advice of counsel goes no farther towards protection of a defendant in a case of this character than is stated in the rule laid down by the judge in his charge to the jury. It is said in the same book, at page 355:

"Under the Georgia code the advice of counsel is not in itself a protection to the defendant in this action; yet evidence of the

fact may be submitted to the jury as a circumstance tending to show a want of malice, the existence of probable cause and a mitigation of damages.''

And that is the rule in some other jurisdictions. It is important, of course, to inquire what the law is in Ohio upon the subject, and to that end we will call attention to certain decisions, most of which have been cited by counsel upon one side or the other in the hearing of this case.

The first is *Ash* v. *Marlow*, 20 Ohio, 119. This does not give much assistance upon the precise point involved here. The fourth clause of the syllabus reads:

''If the defendant, in an action for malicious prosecution, would take shelter under the 'advice of counsel,' he must be prepared to show that he communicated to such counsel all the facts bearing upon the guilt or innocence of the accused of which he had knowledge or by reasonable diligence could have ascertained.''

The effect of such avdice is not stated; that question was not involved there.

In *White* v. *Tucker*, 16 Ohio St., 468, the second section of the syllabus is as follows:

''On the trial of such action the defendant may prove, as a part of the transaction complained of, tending to rebut malice and to mitigate damages, that, at the time he made the complaint against the plaintiff, he stated to the magistrate all the facts upon which it was based, and that, upon his assurance that such facts constituted the crime charged in the affidavit, he instituted the prosecution in question.''

There the facts were not stated to nor the advice given by an attorney at law, but the advice was given by a magistrate, and the extent of protection afforded by the advice of a magistrate is laid down in that case. Reading from the opinion by Judge Day, at page 470, we find this:

''As to the first proposition, it may be remarked that, although the evidence might be admissible, conformably to the general principle that the defendant may prove that he proceeded in good faith, upon the advice of counsel, thereby showing probable cause, still upon the question of malice and of the mitigation of damages it was pertinent and relevant.''

Showing that the Supreme Court at that time and in that case recognized the distinction, the wide difference between the stating of facts to a magistrate and proceeding upon his advice, and the stating of facts to a counselor at law and proceeding upon his advice, and that the court recognized the "general principle" that "the defendant may prove that he proceeded in good faith, upon the advice of counsel, thereby showing probable cause."

In *Lamprecht* v. *Crane*, 4 Bull., 1107, we find a *per curiam*, by the Supreme Court in an unreported case, consisting of seven different propositions. I read the sixth, as introductory to the seventh, and the seventh is applicable here:

"6. And for prosecuting such proceeding in such court, maliciously and without probable cause, an action for malicious prosecution will lie.

"7. Where a prosecution is sought to be justified on the ground of advice of counsel, it is incumbent on the prosecutor to show that all the facts material to the prosecution known to him, or which might have been ascertained by reasonable diligence, were communicated to counsel."

A negative recognition of the rule.

In *Nigh* v. *Keifer*, 5 C. C., 1, the court being composed of Judges Shauck, Shearer and Stewart, of the second circuit, the opinion of Judge Shearer cites with approval and as being in harmony with the law of Ohio, certain decisions of other states bearing upon the case. I read from his opinion at page 3:

"The court below assumed that a full and fair statement had been made in good faith, and that the advice received thereon had been acted upon in good faith; and that all that was testified by Keifer and his attorney in that behalf was true. There, we think, the court below made a mistake.

"The jury, under the rule in Ohio, had the right and the exclusive right to pass upon the credibility of Keifer and his attorney. They had the right, also, to say whether Keifer was actuated by proper motives, and acted in good faith.

"In *Ames* v. *Snider*, 69 Ill., 376, it was held: 'That where a party consults with competent legal counsel, *in good faith,* to ascertain what course to pursue in reference to acts done by another, and such counsel, after proper deliberation and examination into the facts, advises an arrest for a criminal offense, the

party causing the arrest shall not be held to respond in damages for this action, notwithstanding it may appear on the trial the party accused was not guilty. But the advice must be sought *in good faith,* and the party must make a full and honest statement of the facts to counsel.' To the same effect are *Wicker* v. *Hotchkiss,* 62 Ill., 107, and 43 Ind., 78. This, we think, is a fair statement of the rule, and not in conflict with *Ash* v. *Marlow,* 20 Ohio, 119. In that case it is said that 'probable cause' is a a mixed question of law and fact, and if the facts are contested, the court must leave them to the jury with instructions as to what is 'probable cause.' ''

The error of the court in *Nigh* v. *Keifer, supra,* consisted in not submitting to the jury the questions whether the client had fully and fairly stated all the facts to his counsel and whether he had proceeded in good faith upon the advice of counsel. The court excluded those questions from the jury, but the decision, it will be observed, recognized the rule as we have stated it to be the true rule in Ohio.

We are cited by counsel to *Britton* v. *Granger,* 13 C. C., 281, where the real question was as to whether the statement had been made to counsel and the advice given by counsel, before or after the prosecution alleged to have been a malicious prosecution was instituted. In that case, a police officer finding a person in the commission of what he deemed to be a violation of a criminal law, arrested him on view. He then went to the prosecuting officer of the city of Cleveland, Judge Fielder, a duly licensed practitioner of the law, and stated the facts to him and asked for his advice, and upon his advice filed an affidavit charging the person he had arrested with the crime. Upon trial the person was found to be not guilty. Thereupon he instituted a suit for malicious prosecution against the police officer. The police officer undertook to interpose as a defense the advice he had received from counsel, and submitted a charge to the court, which we conceive did not go as far as he might have asked the court to charge; the charge was substantially that given by the learned judge in the court below in this case, but the court below refused to give it. He proceeded to charge that in a proper case, where the facts were perfectly stated to counsel, and the client proceeded on the advice of counsel

and his action is justified thereby, which we understand to be the law; but he charged further, that the arrest having been made before the advice was sought or given, that the rule had no application; that the prosecution was begun before the advice was sought or given, and that therefore this testimony as to having taken the advice of an attorney was only admissible upon the question of malice or good faith, and was not admissible as tending to establish a defense or justification; and with respect to that ruling the circuit court held that the common pleas court was in error; that the prosecution was not in fact begun until the affidavit was made and filed; that the filing of the affidavit was the beginning of the prosecution.   So it will be seen that that case is not of much value to us in the case at bar.

On account of this error in the charge, which is certainly very material and prejudicial, the judgment will have to be reversed and the case remanded for a new tritl.

It is true that in this case the matter of advice of counsel is not pleaded as a defense, but no objection was made to the introduction of evidence on that ground.   The evidence was all heard, all considered, all submitted to the jury, and the court undertook to charge the law upon the question, and therefore the absence of the matter in the pleading was immaterial.   We think, however, that it is the better practice, perhaps necessary in a case of this kind, if objection should be made to the introduction of the testimony, to plead the matter as an affirmative defense.

Various other matters occurred upon the trial that are complained of by counsel for plaintiff in error, one matter being that there was some evidence of the occupation and standing of the plaintiff below, tending to show that he was a man of fair reputation in the community in good standing.   We see no error in that, notwithstanding it was in respect to a matter occurring after the alleged malicious prosecution.   If, on the other hand, he had undertaken to show an impairment of reputation by reason of the malicious prosecution, we think that as well would have been admissible.   Neither are we prepared to say that the verdict was against the weight of the evidence.   We have very serious doubts as to whether this verdict is right, as

to whether it is just, as to whether it is justifiable, but as the case must go back to be retried, we go no farther than to say that we entertain very serious doubts on that question; but it may appear differently if the case comes before us again. We find no other errors in the record; but solely on account of the error that we have pointed out in the charge, the judgment of the court will be reversed and the case remanded.

*James M. & W. F. Brown* and *Clem Wagner,* for plaintiff in error.

*Frank I. Isbell* and *F. M. Sala,* for defendant in error.